**EVAPORATED MILK ASS'N et al. v. ROCHE, District Judge, et al.**

No. 10034.

Circuit Court of Appeals, Ninth Circuit.

Sept. 12, 1942.

Pillsbury, Madison & Sutro, Marshall P. Madison, Francis R. Kirkham, Morrison, Hohfeld, Foerster, Shuman & Clark, Herbert W. Clark, Dunne & Dunne, Arthur B. Dunne, Webb, Webb & Olds, U. S. Webb, Walter K. Olds, Brobeck, Phleger & Harrison, Maurice E. Harrison, Lee M. Olds, and E. R. Hoerchner, all of San Francisco, Cal., Willis I. Morrison and J. Wesley Cupp, both of Los Angeles, Cal., Joseph A. Murphy, of Oakland, Cal., Nat Brown, of Stockton, Cal., W. E. Foley and James W. Foley, both of San Jose, and Patrick A. Geraghty, of Seattle, Wash., for petitioners.

Thurman Arnold, Asst. Atty. Gen., of Washington, D. C., Frank J. Hennessy, U. S. Atty., of San Francisco, Cal., Tom C. Clark and Wallace Howland, Sp. Assts. to Atty. Gen., Fred S. Gilbert, Jr., and Pierce W. Bradley, both of San Francisco, Cal., and Leonard A. Marcussen, of Seattle, Wash., for respondents.

Before WILBUR, GARRECHT, DENMAN, MATHEWS, HANEY, STEPHENS, and HEALY, Circuit Judges.

WILBUR, Circuit Judge.

The petitioners, having been indicted by a grand jury for a violation of the Sherman Anti-Trust Law, 15 U.S.C.A. § 1 et seq., pleaded in abatement that the grand jury returning the indictment was drawn in the term previous to that in which they returned the indictment, and that the hearing before the grand jury upon which the indictment was based was not begun until after the expiration of the term in which the jury was impaneled.

The trial court struck out the pleas in abatement and was about to proceed with the trial of the case under plea of not guilty, when the petitioners applied to this court for a writ of mandamus to compel the trial court to hear the issues raised by their pleas in abatement. This court promptly granted a writ. The respondent filed a petition for rehearing, which was granted and ordered heard before the seven Circuit Judges of this circuit sitting en banc.

The law provides that this court can issue a writ of mandamus to the District Court only when such writ is in aid of its appellate jurisdiction. 28 U.S.C.A. § 377. The respondent insists that inasmuch as the statute expressly provides that there is no right of appeal from a decision of the trial court on a plea of abatement other than to the jurisdiction of the court, 28 U.S.C.A. § 879, the writ applied for in this case cannot be in aid of this court's appellate jurisdiction.[1] On the other hand, petitioners contend that the plea attacks the power of a grand jury to return an indictment and therefore was jurisdictional within the meaning of 28 U.S.C.A. § 879, supra. They further contend that 28 U.S.C.A. § 879, being derived from the Judiciary Act of 1789, (§ 22, c. 20, 1 Stat. 73, 84) does not apply to criminal cases as the original statute was concerned solely with civil actions. We find it unnecessary to discuss these questions because Congress, on the 9th day of May, 1942, amended the law concerning criminal appeals by providing that the United States has a right of appeal from a decision of the trial court in a criminal case on a plea in abatement. Public Laws 543, 77th Congress, ch. 295, 2d session. 18 U.S.C.A. § 682. This court is thereby given appellate jurisdiction over a decision of the trial court in the event that

---

[1] The Circuit Court of Appeals for the Seventh Circuit has recently (September 19, 1941) reversed a conviction in a criminal case upon the identical ground raised by the petitioners, namely, that there was no proper order extending the power of the grand jury to sit in a later term than that in which they were impaneled. The question was raised in the lower court by a motion to quash the indictment and also by plea in abatement and apparently the government did not question the right of the Circuit Court of Appeals to review the ruling. United States v. Johnson, 7 Cir., 123 F.2d 111, 113, 117.

the decision is unfavorable to the government. The trial court, by striking out the pleas in abatement, makes it impossible for the decision of the trial court on the issues raised by the pleas to reach this court. The fact that the statute only permits an appeal from a judgment adverse to the government does not circumscribe our power to control the conduct of the trial court, for it may be when properly determined the decision of the trial court would be adverse to the government. The effect of the decision of the trial judge striking out the pleas is to prevent the entry of an appealable judgment.

■ It is contended by the respondent that the order of the trial court striking out the pleas of the petitioners was in effect an adjudication that the pleas did not state facts sufficient to show that the proceeding should abate. Consequently, it is urged that the trial court having decided the matter, its decision should not be controlled or interfered with by mandamus. The fact that the court exercised its judgment in determining that it had nothing before it is not decisive as to our power, because if the trial court erroneously refuses to proceed to trial of the issues of fact and render a decision, this court by mandamus can compel a trial to determine the issue, although in doing so it overrides the decision of the trial judge that he will not do so. The respondent's contention can be best answered in the language of the Circuit Court of Appeals for the Eighth Circuit in Barber Asphalt Pav. Co. v. Morris, 132 F. 945, 956, 67 L.R.A. 761, as follows:

"Finally, it is insisted that the writ of mandamus should not issue in this case because that writ may not be used to compel a subordinate court to reverse or revise its decision of a question properly submitted for its consideration in the progress of a case before it, or to direct it how to decide or by what rules to proceed. * * * It is undoubtedly the general rule that a court has no power by writ of mandamus to compel a subordinate judicial officer to reverse a conclusion already reached, to correct an erroneous decision, or to direct him in what particular way he shall proceed or shall decide a specified question. But it is equally a part of this general rule that the court always has the power by means of such a writ to compel such an officer to proceed to try and decide a controversy within his jurisdiction, or to perform any other plain duty imposed by law. * * *

The power to compel such an officer to proceed to the trial and determination of a case which it is his duty to hear and decide necessarily includes within it the power to compel him to reverse and set aside any erroneous decision he may have made to the effect that he will not proceed to such a trial and judgment."

This decision is in line with decisions of the Supreme Court.

■ In a recent case, Ex parte United States, 287 U.S. 241, 53 S.Ct. 129, 130, 77 L.Ed. 283, the Supreme Court issued a writ of mandamus to compel the trial court to issue a warrant upon an indictment notwithstanding the contention that the trial judge had exercised his discretion in refusing the warrant. In determining its jurisdiction to entertain the application Supreme Court approved the rule in McClellan v. Carland, 217 U.S. 268, 280, 30 S. Ct. 501, 54 L.Ed. 762, laying down a general rule applicable alike to the Supreme Court and the Circuit Court of Appeals, namely: "That the power to issue the writ under R.S. § 716 [28 U.S.C.A. § 377] is not limited to cases where its issue is required in aid of a jurisdiction already obtained, but that 'where a case is within the appellate jurisdiction of the higher court a writ of mandamus may issue in aid of the appellate jurisdiction which might otherwise be defeated by the unauthorized action of the court below,'" citing, among other cases, Barber Asphalt Pav. Co. v. Morris, 132 F. 945, 67 L.R.A. 761, supra.

The respondent claims the decision of the Supreme Court in Ex parte United States, supra, is not authoritative because the action of the trial court there involved was ministerial and not judicial, and that the Supreme Court had jurisdiction to entertain a petition for mandamus under 28 U.S. C.A. § 342, Judicial Code, § 234. It is sufficient answer to respondent's contention to say that the court did not predicate its action upon § 342, supra, but upon 28 U.S. C.A. § 377, which applies alike to this court and the Supreme Court. Neither did it predicate its action upon the theory that the action of the trial judge in issuing or refusing to issue a warrant was ministerial. The court referred to United States v. Thompson, 251 U.S. 407, 40 S.Ct. 289, 64 L.Ed. 333, which was a direct appeal from an order quashing a grand jury indictment, as pertinent to the refusal of a judge to issue a warrant upon some ground satisfactory to himself, but clearly erroneous.

846

We expressly refrain from deciding whether or not the question raised by the petitioners is one of jurisdiction (see Ex parte Bain, 121 U.S. 1, 13, 7 S.Ct. 781, 30 L.Ed. 849), because it is unnecessary to pass upon that question in order to reach a conclusion herein.

■ It follows that we have jurisdiction to issue a writ of mandamus if we are of opinion that the District Court erred in striking out the petitioners' pleas. The pleas allege in terms that the investigation by the grand jury of the offenses charged against petitioners was not begun during the term in which they were impaneled. It is also alleged that no investigation of these matters had been begun before February 26th, and that therefore the order of the District Court which authorized the grand jury to continue a consideration of the investigations already begun, referred in terms to the date when the order was petitioned for, that is, February 26th. It is conceded that if these facts are true the grand jury had no power to consider the matter or to return the indictment.[2] It is claimed by the respondent, however, that in order to present a proper plea the petitioners could not rely upon the general allegation that no investigation had begun prior to the expiration of the term in which the jury was impaneled, because the proceedings of the grand jury are secret and it must be assumed that unless otherwise alleged the defendant had no information on which to base the general allegation. Assuming without deciding that this is true, a careful consideration of the allegations in the pleas indicates that the petitioners had good ground for their allegation. We do not intend to set up these allegations in detail, but they are based upon the statements of the United States attorney that the "investigation" did not begin until the 28th day of February, two days before the end of the term in which the jury was im-

paneled and upon the minutes of the grand jury for the 27th and 28th of February which were disclosed by the United States in response to the demand of the petitioners.[3]

■ We conclude that the petitioners allege sufficient evidentiary facts to justify their general allegation that the investigations of their alleged crimes were not begun before the end of the term in which the jury was impaneled, and that the government's denial raised a factual issue which should be tried. Having decided that we have jurisdiction to consider the matter presented by the petitioners, and that the action of the trial court was erroneous, the next question is whether or not there are such unusual facts and circumstances as to justify the intervention of this court by mandamus.

In this connection it should be stated that in the return of the order to show cause the respondent has not only admitted, but has expressly alleged most of the evidentiary and circumstantial matters relied upon by the petitioners to justify the allegation that no investigation of the offenses charged was begun before March 2, 1942. While we do not pass upon the sufficiency of this evidence to prove petitioners' pleas, which is a question exclusively for the trial court, it is clear that the issues thus raised should be determined in that court. It seems to be conceded that this trial should be before a jury, (28 U.S. C.A. § 770, R.S. §§ 566, 648) but upon that question we express no opinion, leaving it for the determination of the trial court in the first instance.

■ It is unquestioned that the trial of the issues raised by the plea of not guilty would be long and costly. The respondent does not deny the contention of the petitioners that a trial on the merits of the indictment would cost them hundreds of thou-

2 "* * * A district judge may, upon request of the district attorney or of the grand jury or on his own motion, by order authorize any grand jury to continue to sit during the term succeeding the term at which such request is made, solely to finish investigations begun but not finished by such grand jury, * * *." 28 U.S.C.A. § 421.

3 In United States v. Johnson, 7 Cir., 123 F.2d 111, 120, the court said: "We are not unmindful of the rule invoked by the Government that pleas in abatement and those of a kindred nature must

be strictly construed. Facts must be stated, not conclusions. Here, however, the allegations were direct and positive. It is difficult to see how they could have been more specific. The challenge went to the very heart of the authority of the Grand Jury to act. The Government's motion to strike should have been overruled and the Government required to answer. The defendants were entitled to an opportunity to offer evidence in support of the motion and plea." Citing, Carter v. Texas, 177 U.S. 442, 447, 20 S.Ct. 687, 44 L.Ed. 839.

sands of dollars and require months of time, whereas it is clear that the trial of the issue as to whether or not proceedings were instituted before the 2nd of March, that is, on February 28th, can be readily and quickly determined. Clearly, the defendants are entitled to have this issue disposed of before being subjected to a trial on the indictment.

In view of our decision it may be unnecessary to issue the writ of mandamus to the lower court. We will suspend the issuance of the writ for 30 days, in order that the lower court may proceed as indicated. Writ of mandamus will not follow the terms of the petition, but will merely require the court to reinstate the petitioners' pleas and the government's reply thereto and proceed to the trial of the factual issues thus raised.

STEPHENS, Circuit Judge, does not participate in the decision of this case.

DENMAN, Circuit Judge (dissenting).

This is a proceeding in mandamus in which the petitioners seek to have vacated an order of the district court, granting, because of failure to allege a defense, a motion to strike petitioners' pleas in abatement which sought to quash the indictment. The order was rendered after a hearing with argument and deliberation. There was no motion below to amend the pleas and the abatement proceeding was completely terminated.

I. *There was no error in striking the pleas in abatement.*

This dissent is, in part, to the holding of the majority opinion that the pleas "allege in terms that the investigation by the grand jury of the offenses charged against petitioners was not begun during the term in which they were impaneled." These "terms" constitute the essence of the matter submitted for Judge Roche's decision. In a case of such importance that it required our first plenary session, both the litigants and the judge reversed seem entitled to a statement of the allegations ruled upon by that judge, and a reasoned consideration of the character of the error he has committed.

The plea in abatement is an affirmative defense in a proceeding separate from the trial on the indictment. The pleas here must allege that during the entire 1940 November term the grand jury commenced no investigation of the matters alleged in the indictment.

It is a very simple matter to draw such an allegation of ultimate fact. Forty-three of the defendants, all except the Carnation Company,[1] chose to do otherwise. They pleaded the facts on which they relied as establishing their contention and limited their allegation of an absence of action in the 1940 November term to these facts. Since the proceeding was in abatement the court was obliged to construe strictly the allegations so limited. Olmstead v. United States, 9 Cir., 19 F.2d 842, 845, 53 A.L.R. 1472.

As to these forty-three defendants what Judge Roche actually passed upon were allegations concerning the minutes of the grand jury dated February 28, 1941, alleged to be as follows:

"Special meeting of the Federal Grand Jury held this day, Foreman Mrs. Hattie H. Sloss, presiding. Minutes of previous meeting read and approved as corrected. (See below). Special Assistant to the Attorney General Charles C. Pearce and Special Assistant Charles S. Burdell continued the presentation of the investigation of the peach industry for violation of the Sherman-Anti-Trust Act. There being no further business the meeting adjourned." Signed "C. N. Alexander, Secretary, Approved Eva L. Gibson, Foreman, pro tem."

"The following industries were also named by witnesses and investigation begun. Plywood; Wines and Grape Industry; Wholesale and Retail Groceries; Canned and Evaporated Milk; Canned Fruit and Vegetables; Sardine Industry; all Food industries were suggested for investigation, and investigation of Sugar Beet Industry was begun. Other industries named as subject to investigation are Salmon Industry, Canned Pineapple, Walnuts and Almonds, Tomatoes, Dried fruits, and a certain Labor Union with headquarters or located in Oakland. Asparagus and Cherries."

Following this is the plea's allegation that

"The 'previous meeting' referred to in said minutes was the meeting of February

---

[1] The Carnation Company pleaded the entire record in the case, including the minutes of the grand jury, infra, and sought a decision analogous to a motion for an instructed verdict. The plea alleged no defense.

27, 1941. The statement in said minutes, 'investigation begun,' with reference to the canned and evaporated milk industry is a conclusion of law, not supported by the facts stated in said minutes. Said minutes show, *and on the basis thereof said defendants allege,* that no investigation of any matter mentioned in said indictment and no investigation of any defendant joining in this plea was 'begun,' within the meaning of the Act of April 17, 1940 (U.S.C. 28:421 [28 U.S.C.A. § 421]), on February 27, 1941, or at any other time during the said November 1940 term." (Italics inserted.)

If the matter following the grand jury secretary's signature is not deemed part of the minutes and the matter above is deemed to stand alone there is no allegation at all that at no prior session was begun an investigation of the evaporated milk industry. Hence, no defense is stated.

If the statement below that "the following industries were also named by witnesses and investigations begun * * * canned and evaporated milk," is part of the minutes then there is no allegation that what was described as an "investigation begun" was not of such matters as are described in the indictment. Hence, the fact of the non-existence of the beginning of the investigation is not affirmatively alleged and the plea states no defense.[2]

If it be true that the words "investigation begun" state a conclusion of law (and not as I believe an ultimate fact) then the succeeding allegation (of which the "basis" is what "said minutes show") is a mere conclusion of law. That allegation is,

" * * * that no investigation of any matter mentioned in said indictment and no investigation of any defendant joining in this plea was 'begun', * * *."

The words of the minutes "investigation begun" of the "canned and evaporated milk industry" mean just what they say and describe a fact and not a conclusion of law. These words cannot be tortured into the necessary allegation that no act was done by the grand jury in the November 1940 term by way of beginning an investigation of the acts of defendants with reference to their possible indictment for violating the Anti-Trust Law, 15 U.S.C.A. § 1 et seq., in connection with the evaporated milk industry. Judge Roche committed no error in striking the pleas. That the petitioners had fully stated their defense in the pleas is apparent from their not seeking to amend.

However, the court has no power to issue mandamus even assuming the lower court erred in its final decision on the issue of law tendered by the pleas and joined by the motions to strike.

II. *Every plea in abatement tenders two issues, one of law as to its sufficiency, and one of fact. The decision adverse to the plea of the tendered issue of law joined by a motion to strike for sufficient facts, makes a complete and terminating disposition of the separate abatement proceeding.*

This dissent is also from the holding of the majority that "The trial court, by striking out the pleas in abatement, makes it impossible for the decision of the trial court on the issues raised by the pleas to reach this court," and "The effect of the decision of the trial judge striking out the pleas is to prevent the entry of an appealable judgment."

In this respect the majority opinion is in square conflict with the recent decision of the Seventh Circuit in United States v. Johnson, 123 F.2d 111. There, as here, the question was whether the grand jury had begun its investigation in the term for which it was created. On a motion to quash, the defendants, as here, attempted to allege the facts supporting the motion. There, as here, the government raised the issue of law as to the sufficiency of the facts alleged, by a motion to strike. The court says of this motion to strike,

"The Government had an opportunity to answer the allegations of the motion to quash, but instead, entered a motion to strike, which was allowed. By such motion a legal question was presented which must be determined from the averments of the motion to quash." 123 F.2d 118.

The circuit court of appeals entertained the claim of error in the lower court's ruling on appeal from the judgment on the verdict and reversed.

The plea in abatement tenders two kinds of issues. One is an issue of law as to its sufficiency, this to be joined, as here, by motion to strike or by demurrer. The other is an issue or issues of fact to be joined by the replication.

It is elemental that if, as here, the tendered issue of law, so joined, is decided ad-

---

[2] It is my understanding that Judge Healy concurs in the conclusion that there was no error in Judge Roche's order striking out the pleas.

versely to the plea, the abatement proceeding (in the absence of amendment, not here sought) is ended. The judicial duty of the trial court and its only judicial duty is to dismiss or strike out the plea. In so doing the district judge does not refuse to permit a replication to be filed, which, if it join the tendered issue of fact, it refuses to allow to go to trial. What the judge does is to make a judicial determination that there is nothing to answer and nothing to try. The separate proceeding in abatement is so decided and terminated.

The adjudication refusing to sustain the plea in abatement is a denial of its prayer to quash the indictment. The illogic of the majority position that this is not judicial action determining that there is nothing to go to a jury, but a refusal of the court to take any judicial action whatsoever and hence warranting mandamus is apparent when we apply this reasoning to a direct motion to quash the indictment because it alleges no facts constituting a crime.

Under the reasoning of the majority holdin , the trial court's denial of a direct motion to quash the indictment (and hence discharge the accused) is not a judicial determination that the accused must be tried. It is a refusal to act at all with regard to the quashing of the indictment. Hence, mandate should issue at once to determine whether the court committed error in so construing the indictment!

Under this reasoning in every mail fraud or other conspiracy case and indeed any case involving an expensive, time consuming trial, there must be entertained such a mandamus proceeding if a motion to quash the indictment be denied, just as now must be entertained a mandamus proceeding in every such case where such pleas in abatement are stricken on motion!

Judge Roche here proceeded to try the issues of law so joined by the government's motions to strike [3] on the grounds that the only relief prayed for is not warranted by the facts alleged. The transcript shows,

"The motions to strike * * * cer-tain pleas in abatement *having been argued and submitted to the Court for consideration and decision and the Court being fully advised,* IT is Ordered that the motions to strike the First, Second, Third and Fourth such pleas, and each of them, contained in the pleading entitled 'PLEAS ON BEHALF OF CERTAIN DEFENDANTS' filed on September 13, 1941 by Messrs. Pillsbury, Madison & Sutro and associated counsel, be and the same is hereby GRANTED; that said Motions to strike the Fourth Plea and Fifth Plea, and each of them, contained in the pleading 'PLEA ON BEHALF OF CARNATION COMPANY' filed herein on August 29, 1941 by Arthur B. Dunne, Esquire, be and the same are hereby GRANTED; * * *" [Italics added].

Judge Roche thus completely disposed of the separate proceeding after judicial consideration of the tendered issue of law joined by the motion to strike.

It is obvious that Judge Roche's full performance of his function in deciding the issue of law so raised does not become no performance at all because he may have erred. He causes no cessation of the criminal proceeding which it appears from the petition is set for trial. In this respect his action is entirely different from the refusal to act by the district judges in McClellan v. Carland, 217 U.S. 268, 280, 30 S.Ct. 501, 54 L.Ed. 762; Ex parte United States, 287 U.S. 241, 246, 53 S.Ct. 129, 77 L.Ed. 283, and Barber Asphalt Pav. Co. v. Morris, 8 Cir., 132 F. 945, 67 L.R.A. 761, where mandamus was held applicable.

In McClellan v. Carland, the district judge refused to proceed with the case before him until the decision of the same cause of action pending in the state court. It is obvious that upon a decision of the state court on the merits the case would be res judicata and the appellate court frustrated of an appeal considering the merits. The Supreme Court held [217 U.S. 268, 30 S.Ct. 504, 54 L.Ed. 762],

"Inasmuch as the order of the circuit

---

[3] It is not seriously questioned that in criminal pleading, the issue of absence of facts may be raised by a motion to strike. United States v. Johnson, 7 Cir., 123 F. 2d 111, 118. In any event the court has inherent power, in its discretion and without motion, to hold a hearing and strike out such pleas. In the enforcement of the criminal law the court is under judicial obligation to reach the trial on the merits of the charges of the indictment with all the dispatch compatible with the proper preparation of the facts on the merits by the prosecution and defense. Causing on its own motion, the disposition of a plea, which the court judicially holds as mere deadwood, is a proper performance of the trial court's obligation in this respect.

850

court, staying the proceeding until after final judgment in the state court, might prevent the adjudication of the questions involved, and thereby prevent a review thereof in the circuit court of appeals, which had jurisdiction for that purpose, we think that court had power to issue the writ of mandamus to require the circuit court to proceed with and determine the action pending before it."

The phrase "unauthorized action" in the portion of that opinion cited by the majority opinion here that "where a case is within the appellate jurisdiction of the higher court a writ of mandamus may issue in aid of the appellate jurisdiction which might otherwise be defeated by the unauthorized action of the court below", means what it says—action *unauthorized,* not as here, the authorized action of deciding the issue of law, in which authorized action error may be committed.

The decision in Barber Asphalt Paving Co. v. Morris, supra, relied on in the majority opinion, is also a case in which the district judge refused to proceed while awaiting a decision of the same cause in the state court. The language cited in the majority opinion,

"* * * But it is equally a part of this general rule that the court always has the power by means of such a writ to compel such an officer to proceed to try and decide a controversy within his jurisdiction, or to perform any other plain duty imposed by law. * * * The power to compel such an officer to proceed to the trial and determination of a case which it is his duty to hear and decide necessarily includes within it the power to compel him to reverse and set side any erroneous decision he may have made to the effect that he will not proceed to such a trial and judgment."

has no applicability here where the Judge did "proceed to the trial and determination" of the issue of law tendered in the separate abatement proceeding, and adjudicated it adversely to petitioners.

In Ex parte United States, the district judge refused to issue a bench warrant sought by the district attorney, and thereby obtain jurisdiction in personam over the indicted defendant.[4] There is no conceivable way in which the United States can appeal from such refusal of the court to act. Unless the accused voluntarily appear there may never be a trial from which on conviction there would exist appellate jurisdiction. The sole question presented and decided was stated as follows:

"The sole ground alleged in the return for such denial is that the matter was within the judicial discretion of the court, and therefore not subject to mandamus proceedings."

The Court held that no discretion existed to issue the bench warrant as it was mandatory, and that "The refusal of the trial court to issue a warrant of arrest under such circumstances is, in reality and effect, a refusal to permit the case to come to a hearing upon either questions of law or of fact, and falls little short of a refusal to permit the enforcement of the law."

The issue of mandamus in such a case where the judge's action was mandatory and where there was no right of appeal has no relevance to the case at bar where the district judge exercised fully his function of deciding the issue of law and where, as later discussed, there is an appeal to cure his alleged error in so exercising that function.

III. *The majority decision necessarily holds that both the United States and petitioners may present on appeal, claimed error in the final disposition of this abatement proceeding.*

The majority opinion states that it declines to pass on the question whether the pleas in abatement are to the jurisdiction of the court and hence whether the petitioners have a right to present on appeal a claim of error in an adverse decision thereon.[5]

It is obvious that in so refusing to pass on the question whether the decision of the district court is or is not reviewable on appeal from an adverse verdict, it necessarily follows that the majority assume that even if error in the decision may be corrected on appeal, nevertheless mandamus will be granted for its immediate correction.

However, the majority opinion holds that the pleas are of the following character:

"The petitioners, having been indicted by a grand jury for a violation of the Sherman Antitrust Law, pleaded in abatement

4 Jurisdiction in personam is essential to the jurisdiction of the court. Employers Reinsurance Corp. v. Bryant, 299 U. S. 374, 381, 57 S.Ct. 273, 81 L.Ed. 289.

5 28 U.S.C.A. § 879 gives petitioners the right to present on appeal their claim of error in an adverse decision, if the plea is to the court's jurisdiction.

that the grand jury returning the indictment was drawn in the term previous to that in which they returned the indictment, and that the hearing before the grand jury upon which the indictment was based was not begun until after the expiration of the term in which the jury was impaneled."

Assuming the majority opinion properly describes the pleas, it means that they allege that no indictment was presented by any grand jury. The district court had before it a document purporting to be an indictment, but which in legal contemplation was nothing. Hence, it is a necessary conclusion that the court had jurisdiction neither of the subject matter nor of the persons of the defendants. The decisions in Ex parte Bain, 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849, and Albrecht v. United States, 273 U.S. 1, 8, 47 S.Ct. 250, 71 L.Ed. 505, clearly apply.

In Ex parte Bain, the petitioner sued out a writ of habeas corpus, alleging that he had been tried on an indictment amended on motion of the government after its return by the grand jury. The Supreme Court held that since the indictment was "no indictment of a grand jury" the court had no jurisdiction to try or convict the petitioner, saying [121 U.S. 1, 7 S.Ct. 788, 30 L.Ed. 849],

"It is of no avail, under such circumstances, to say that the court still has jurisdiction of the person and of the crime, for, though it has possession of the person, and would have jurisdiction of the crime, if it were properly presented by indictment, *the jurisdiction of the offense is gone,* and the court has no right to proceed any further in the progress of the case for want of an indictment."

Directly in accord is the decision of the Supreme Court in Albrecht v. United States, supra [273 U.S. 1, 47 S.Ct. 252, 71 L.Ed. 505], where the court, citing Ex parte Bain, held that

"A person may not be punished for a crime without a formal and sufficient accusation even if he voluntarily submits to the jurisdiction of the court," and that a court "may acquire jurisdiction over the person of the defendant" only "where there was an appropriate accusation either by indictment or information, * * *."

There is, of course, no ground of distinction between an "indictment" which is no indictment at all because it has been amended, as in Ex parte Bain, supra, and an "indictment" which is no indictment at all because it was returned by the grand jury without power to return it. Having no power, the members of the jury do not act as a grand jury and the effect of their action is nothing more than if a group of bystanders had handed to the court a paper labeled "indictment".

Since the pleas are to the jurisdiction it follows that the petitioners here have the right under 28 U.S.C.A. § 879 to claim error on appeal. United States v. Johnson, supra. The only question here presented is whether their claim of error on the appeal allowed by law may be shortened in time by a writ of mandamus.

Since the court holds that the government has recently been given the right of appeal, this court has jurisdiction on an appeal by either party aggrieved by the final decision in the separate proceeding in abatement. If the plea is sustained and the indictment quashed the government may appeal at once. If, as here, the plea be denied either because of its failure to state a cause for quashing the indictment or on a trial of the facts, the petitioners, if they later are convicted, may then appeal both on the denial of the pleas and the convictions.

IV. *Mandamus will not be granted where the party aggrieved by a decision of the trial court has a remedy by appeal whether immediate or on a final decision of the case.*

Since the petitioners may appeal from the judgment on conviction and present the claimed error in striking out the pleas, it is apparent that the majority opinion granting mandamus is not doing what it claims, i. e., that it is issuing its writ "in aid of its appellate jurisdiction". On the contrary it is defeating its appellate jurisdiction to review the claimed error, and is substituting its writ of mandamus for the appeal. The decision on mandamus is res judicata of the claimed error and prevents its reconsideration on appeal.

That this court is prohibited from so defeating its appellate jurisdiction has been repeatedly decided by the Supreme Court in a series of cases from Ex parte Harding, 219 U.S. 363, 371, 31 S.Ct. 324, 55 L.Ed. 252, 37 L.R.A.,N.S., 392, to In re National Labor Relations Board, 1938, 304 U.S. 486, 496, 58 S.Ct. 1001, 82 L.Ed. 1482, each holding that it is not agreeable to the usages and principles of law so to prevent

appeal and substitute mandamus therefor. The principle is applied whether the adjudication below warrants an immediate appeal or is merely interlocutory in character, where error may be asserted only when appeal is taken from the final judgment.

In Ex parte Harding, federal jurisdiction was claimed on the ground of diversity of citizenship and a separable controversy. A motion to remand was made on the ground that these jurisdictional facts were not present. The district court took evidence and denied the motion. Mandamus to compel him to remand was sought in the Supreme Court. That Court reviewed many of its preceding decisions, distinguishing some, overruling others, and at page 371 of 219 U.S., at page 326 of 31 S.Ct., 55 L.Ed. 252, 37 L.R.A.,N.S., 392, reaffirmed its ruling in the preceding identical case of In re Pollitz, 206 U.S. 323, 331, 27 S.Ct. 729, 51 L.Ed. 1081. The Court states the rule so reaffirmed,

"The court [in the Pollitz case], after stating ([206 U.S.] p. 331 [27 S.Ct. 729, 51 L.Ed. 1081]) the general rule that 'mandamus cannot be issued to compel the court below to decide a matter before it in a particular way, or to review its judicial action had in the exercise of legitimate jurisdiction, nor can the writ be used to perform the office of an appeal or writ of error,' refused to take jurisdiction and review the action of the court below, and therefore declined to issue the writ."

This holding was reaffirmed where the presentation of the claimed error in the ruling on the jurisdictional amount under the Federal Employers' Liability Act, 45 U.S. C.A. § 51 et seq., also had to wait the appeal on the judgment on the merits. Ex parte Roe, 234 U.S. 70, 73, 34 S.Ct. 722, 58 L.Ed. 1217.

The Harding and Roe decisions were made the ground of the decision in Ex parte Park Square Automobile Station, 244 U.S. 412, 37 S.Ct. 732, 733, 61 L.Ed. 1231, where a motion to remand from the Northern District of New York to the United States District Court of New Hampshire was denied. The Supreme Court states,

"This motion having been overruled ([Park Square Automobile Station v. American Locomotive Co., D.C.], 222 F. 979), the case was brought directly here upon the theory that the alleged error resulting from the refusal to remand was susceptible of being reviewed although no

final judgment had been entered in the cause."

It was argued that the writ of mandamus should issue because of the saving of expense,

"* * * because of the grave wrong which would result from forcing the petitioner to try its case in the state of New York, at great inconvenience and expense, as a preliminary to securing a review of the question of jurisdiction,—an expense and inconvenience which would be saved if, by review, now, by means of a writ of mandamus, the removal statutes be given their natural meaning, and thus the wrong and confusion arising from their misconstruction would be avoided. And in support of the exceptions thus asserted, reliance is placed on expressions contained in the opinion in Ex parte Harding, 219 U.S. 363, 373, 31 S.Ct. 324, 55 L.Ed. 252, 255, 37 L.R.A., N.S., 392, by which it is contended they are sustained.

"But conceding that the error which the proposition attributes to the ruling below is manifest, the conclusion drawn from the opinion in Ex parte Harding is obviously a mistaken one."

In denying that such saving of expense justifies the writ the Court holds,

"And this also makes clear that, however grave may be the inconvenience arising in this particular case from the construction which the court gave to the statute, and upon which it based its assertion of jurisdiction, greater inconvenience in many other cases would necessarily come from now departing from the established rule and reviewing the action of the court by resort to a writ of mandamus instead of leaving the correction of the error to the orderly methods of review established by law."

In Re Chicago R. I. & P. Ry., 255 U.S. 273, 280, 41 S.Ct. 288, 65 L.Ed. 631, the rule in the Roe case was applied though the right to appeal had been lost by failure to follow the appropriate procedure.

These cases were cited with approval, but necessarily held not controlling because there was no remedy by appeal, in State of Maryland v. Soper, 270 U.S. 9, 29, 46 S.Ct. 185, 70 L.Ed. 449. There the grand jury of the State of Maryland had had indicted several defendants for murder. The case was removed from the state court to the Maryland United States District Court. Maryland could not appeal either from the denial of the motion to remand or the judg-

ment of acquittal in the United States District Court and thus have presented the question of the power of the United States to deprive the Maryland court of the right to try the crime committed in that state. Hence, the admitted rule of the Harding and Roe cases did not apply and the writ of mandamus issued.

Similarly it was necessary to distinguish the Harding and Park Square Automobile Station cases in Stratton v. St. Louis S.W. Ry., 282 U.S. 10, 16, 51 S.Ct. 8, 75 L.Ed. 135, where no appeal lay from a decision of a single judge in a three judge case under Section 266 of the Judicial Code, 28 U.S.C.A. § 380. Mandamus which, it is held, would be denied if remedy by appeal existed, was granted.

Similarly in In re National Labor Relations Board, 1938, 304 U.S. 486, 496, 58 S.Ct. 1001, 82 L.Ed. 1482, the Harding and In re Chicago R. I. & P. Ry. cases were cited and the writ issued because the remedy by appeal was not available to the Labor Board where the circuit court of appeals, without jurisdiction, in a proceeding commenced against the Board by the Republic Steel Corporation because no transcript of the Board's proceedings had been filed, enjoined the Board from further proceedings in the case before it. The sole questions discussed and decided were the absence of jurisdiction and the absence of any method of review of the court's restraining order which would bring the case before the Supreme Court. It is apparent that if, as in the case at bar, the claimed error of the court's restraining order could have been determined by appeal the writ of mandamus would have been denied.

Probably no better statement of the rule has been made than in the recent holding in Mr. Justice Cardozo's opinion in Interstate Commerce Commission v. United States, 1933, 289 U.S. 385, 393, 53 S.Ct. 607, 611, 77 L.Ed. 1273,

"Errors of law in the discharge of a function essentially judicial are not subject to be corrected through the writ of mandamus any more than errors of fact. If the Commission had declined to listen to the claim for reparation, or finding reparation due had declined to order payment, mandamus might have been available to hold it to its duty. That is not what happened. The Commission heard the complaint and proceeded to a decision. If the mandamus were to stand, the result would not be to compel the Commission to adjudicate the cause, for that it has already done; the result would be to compel an adjudication in a particular way. The rule is elementary that this is not the function of the writ. Mandamus is an appropriate remedy to compel a judicial officer to act. It may not be used as a substitute for an appeal or writ of error to dictate the manner of his action."

V. *Avoidance of the expense of a trial is no ground for granting the writ, where an appeal is available.*

This dissent is also to the holding that "Clearly, the defendants are entitled to have this issue disposed of before being subjected to a trial on the indictment", because of time and expense of that trial.

The latest Supreme Court case in which the contention is made that on an interlocutory decision the losing litigant may have a writ of mandate to avoid the expense of the trial of the main issue is Ex parte Park Square Automobile Station, supra. There the court rejected it in the language above quoted. This court also in Whittel v. Roche, 1937, 88 F.2d 366, 371, rejected it, saying,

"The question before us is whether the power to issue the writ exists and that to say the least depends upon the existence of special circumstances *other than the mere expense of trial.*" (Emphasis supplied)

I see nothing in the present case to warrant an overruling of the principle so established. Here are 44 defendants alleged to control one of the largest and most widely distributed manufacturing and selling industries in the United States. The time of trial will be long but so also is it in many mail fraud and other conspiracy cases. The costs will be large compared to other cases, but not compared to their huge capital investments whose use is alleged to have been perverted to acts creating monopolistic prices.

If the present law were changed and it were a matter of discretion to determine at what point the costs were sufficient to substitute mandamus for appeal, great disorder would ensue. What would be the criterion?

Certainly the human element is of primary concern in criminal justice. Will the measure be whether the cost will be ruinous to an accused man? Suppose it is an elderly bookkeeper charged with embezzlement, facing what is to him a long heartbreaking trial of two weeks. The time is short com-

pared to a conspiracy trial, but is it short in human value? Suppose the bookkeeper mortgages his homestead for $3,000 to meet his costs and he and his family emerge from an acquittal into aged poverty. Should he be refused the mandamus to review his denied claim that the indictment should be quashed because he could be tried in a fortnight and the costs be only $3,000, while the writ is granted to these great corporations?

VI. *This court has no power to direct the form of the allegations of the government's replications.*

This is also a dissent from assumption of the power by this court to direct the manner in which a litigant, here the government, shall make its replication to the plea. Assuming the existence of jurisdiction to issue mandamus to set aside the order of the lower court on the motion to strike, it seems the court's powers end with the mandamus to set aside the order.

The government's replications to the pleas were withdrawn,[6] and on the motion to strike the pleas serious consideration was given to their phraseology. Having this court's construction before it, the government well may desire to file replications different from those it withdrew. Yet the court orders the restoration of the withdrawn replications and that the court below shall proceed to try the issues of fact *so framed by this court and not by the litigant.*

It is elementary that the appellate court cannot control the discretionary acts either of the district court or the parties to the litigation.

The petition for the writ should be denied.

HEALY, Circuit Judge (dissenting).

I believe mandate should be denied. The trial judge ruled on the sufficiency of the pleas in abatement. Not only did he rule; I think he ruled correctly.

The grand jury minutes, as set out in the pleas, affirmatively state that the investigation of the canned and evaporated milk industry was begun February 27, 1941, that is to say, during the term in which the jury were impaneled. The general allegation to the contrary, contained in the pleas, is substantially negatived by all evidentiary matters pleaded in support thereof, namely the minutes and the statements of the United States attorney who was in charge of the investigation. Pleas of this kind are strictly construed; and there were compelling reasons for scanning the pleas narrowly in this instance. Without at all questioning the motive of the petitioners, it is to be noted that their pleas in abatement contemplate nothing more nor less than a fishing expedition into the proceedings had before the grand jury relative to their case. Thus the accused, in advance of trial, may on purely speculative grounds obtain access to wholly privileged material. The trial judge committed no error in striking the pleas for insufficiency.

But assuming the judge was in error in his ruling, I think the error may be reviewed by this court only upon appeal from the final judgment in the event the case goes against the indicted parties. Mandate issued at this juncture is not in aid of our appellate jurisdiction; it is an unwarranted exercise of supervisory control over the conduct of the case below. What the majority do is to reverse the trial judge for an error of law committed in the discharge of a judicial function, and to dictate to him how he shall discharge that function. Such is not the office of mandate, Interstate Commerce Commission v. United States, 289 U.S. 385, 393, 53 S.Ct. 607, 77 L.Ed. 1273. The chief argument in support of the course is said to be the saving of the expense of a long trial. At best the argument is of doubtful validity. It can be advanced with equal force in cognate situations in many cases, civil as well as criminal. If it be accepted as justifying so extraordinary an assumption of power the consequence can only be endless delays and the disruption of the orderly administration of justice in the trial and appellate courts. Perhaps precedents may be found in the books for such a course, but we are by no means obliged to follow them.

---

[6] The order of the district court granting, before trial, the motion to withdraw the replications is clearly within the discretion of the trial judge. Loeb v. Eastman Kodak Co., 3 Cir., 183 F. 704, 710.