UNITED STATES of America
v.
Bernhard FEIN, Defendant.
No. 72–CR–1115.

United States District Court,
E. D. New York.

Jan. 29, 1974.

Reargument Denied Feb. 13, 1974.

Victor Rabinowitz, New York City, (Rabinowitz, Boudin & Standard, New York City, of counsel) Michael Krinsky, New York City, of counsel on the brief, for defendant, for the motion.

Anthony T. Accetta, Brooklyn (Edward J. Boyd, V, U. S. Atty., of counsel), for the Government, opposed.

MEMORANDUM and ORDER

DOOLING, District Judge.

The defendant has moved to dismiss the indictment on the ground that the Grand Jury's term could not legally be extended to the date on which the indictment was found and to the date on which the alleged perjury of Count 2 was allegedly committed before the Grand Jury.

The Special Grand Jury which found the indictment in the present case was convened on March 17th pursuant to an order of the Chief Judge made on March 11, 1971. It was established to consider anti-trust matters. But in early September of 1971, nearly six months after the jury was first convened, it commenced to hear testimony with respect to Federal Housing Administration matters out of which the present indictment grew. The Special Grand Jury

provisions of Chapter 216 of Title 18, § 3331 and following, had already been enacted, and a Section 3331 Special Grand Jury had been convened on January 25, 1971 by order of the Chief Judge entered January 22, 1971. It does not appear that any determination was made that the volume of the business of that Grand Jury exceeded its capacity to discharge its obligations, or that the March Grand Jury that found the present indictment was ordered into existence to make up for such a want of capacity. *See* 18 U.S.C. § 3332(b). Nothing, therefore, indicates that the Special Grand Jury that found the present indictment was any other Special Grand Jury than one created under Rule 6(a) and (g) as the order itself sets forth. In consequence, its term was limited by Rule 6(g) to 18 months.

The provisional decision of Judge Weinstein on Fetell's motion in United States v. McDonnell, 73–CR–562, would unhesitatingly be followed but that the legislative history, elaborately presented by the defendant here, and the special circumstance that the second count in the present indictment charges perjury allegedly committed during the extended life of the Grand Jury, place the present case in a very different perspective from the case before Judge Weinstein. The language of Chapter 216 leaves no doubt that the Special Grand Juries there authorized in some but not all districts are distinctively Special Grand Juries. They have the power to apply for an enlargement of their own term if the Court fails to act (Section 331(b) ). They have the power to render reports under Section 3333, and Grand Juries generally are not regarded as having any such power of report. It must, therefore, be concluded that the present Grand Jury cannot be regarded as having been created under Chapter 216 of Title 18, and that its term had expired when the present indictment was found.

The expiration date of the Grand Jury, if its term was not validly extended, was September 17, 1972, the indictment was found on September 26, 1972, some nine days after the expiration date of the Grand Jury. Two days after the expiration of the Grand Jury's term, on September 19, 1972, the defendant was called before the Jury, sworn, and then gave the testimony which Count 2 charges as perjury.

Meanwhile, however, under date of August 30, 1972, the Chief Judge had signed an order reciting Section 3331 of Title 18 and extending the life of the Special Grand Jury convened March 17, 1971 to March 17, 1973, to complete the business before it. While no formal petition for extension was submitted to the Chief Judge, Government counsel explained to the Chief Judge the substantial developments that had occurred in the investigation of F.H.A. matters and the amount of time needed to complete the work before the Grand Jury. The Chief Judge was also advised that the members of the Grand Jury had themselves voted for the extension of the life of the Grand Jury. It might be thought possible to extend the Grand Jury's life by converting the Rule 6 Special Grand Jury into a Section 3331, 3332(b) Grand Jury. However, since a Section 3331(a) Grand Jury was already sitting, conversion of the March 1971 Grand Jury into a Section 3332(b) Special Grand Jury, if possible at all, would have required the special determination of Section 3332(b), and that was not made.

Nevertheless, the Grand Jury was in existence, did interrogate witnesses, and did find indictments. Could it function as a *de facto* Grand Jury beyond its term where, at least, it had color of right to exist in the order made by the Chief Judge even though that order should not have been made, and, no doubt, would not have been made, had all the data been drawn to the attention of the Chief Judge? It has been said that Grand Juries are a creature of statute, In re Mills, 1890, 135 U.S. 263, 267, 10 S.Ct. 762, 34 L.Ed. 107. The several federal cases that have considered the question have all come up under an earlier form of the provision for Grand Ju-

ries, that contained in former 28 U.S.C. § 421, which in substance provided that—

> "And the district judge or the senior district judge, as the case may be, may, upon request of the district attorney or of the grand jury or on his own motion, by order authorize any grand jury to continue to sit during the term succeeding the term at which such request is made, solely to finish investigations begun but not finished by such grand jury: *Provided, however,* That no grand jury shall be permitted to sit in all during more than three terms."

The cases to be discussed all turned on whether or not the investigation of the subject matter of the indictment had been commenced in and continued from the preceding term to the term in which the Grand Jury returned the indictment; in each case there was an order of court continuing the jury for the purpose of finishing investigations commenced at an earlier term. United States v. Johnson, 7th Cir. 1941, 123 F.2d 111, 119–121, reversed a conviction because the count had been found by a continued Grand Jury on subject matter not under investigation at its original term but first introduced at the continuation term. The court observed that, in spite of an earlier holding of its own, ". . . there is no such thing as a de facto Grand Jury in a Federal Court." The case was in its result reversed by the Supreme Court, 1943, 319 U.S. 503, 63 S.Ct. 1233, 87 L.Ed. 1546, the Court concluding that the defendants had failed to prove that the subject matter of the indictment was new and not matter under investigation by the Grand Jury during the preceding term. The Court appears to have accepted, although without express repetition, the principle of the decision of the Circuit Court of Appeals, that is, the life of the Grand Jury had expired as to all subject matter except that embraced in unfinished investigations; as to other subject matter the Grand Jury was an expired Grand Jury and its indictment would not sup-

port a conviction. Evaporated Milk Ass'n v. Roche, 9th Cir. 1942, 130 F.2d 843, 846–847, is to the same effect; it came up on mandamus and was reversed on the ground that it was not a proper case for mandamus. Roche v. Evaporated Milk Ass'n, 1943, 319 U.S. 21, 31, 63 S.Ct. 938, 87 L.Ed. 1185. The lower court said that if the subject matter covered by the indictment had not been opened before the Grand Jury before the date on which the continuation order was entered, "It is conceded that . . . the grand jury had no power to consider the matter or to return the indictment." And United States v. McKay, E.D.Mich.1942, 45 F.Supp. 1007, 1013–1015 is to the same effect and relies on *In re Mills, supra,* and United States v. Johnson, *supra.* It repeats the statements from the two cases, "The grand jury sitting in such a court is strictly a creature of statute . . . There is no such thing as a de facto grand jury in a Federal Court." The Court continued

> "Its original life and authority to act, and any continued existence which it may have after the expiration of the term for which it was empaneled, depends strictly upon statutory authority, and unless that authority is complied with there is no jurisdiction to return an indictment."

Many cases on the general subject are collected in Annotation, 1961, 75 A.L.R. 2d 544, an annotation annexed to People v. Hall, 1959, 16 Ill.2d 223, 157 N.E.2d 26, which held that under the law of Illinois there were *de facto* grand juries which could function as holdover bodies at least until a new grand jury was selected in the same county. The annotation catalogues the variety of results reached where grand juries operate beyond their terms under no orders or under defective orders; the variety of result appears to flow from the wide differences in the statutes and rules under which the grand juries are convened and function.

While Rule 6(a), (g) is in form a rule and different in its terms from former

28 U.S.C. § 421, it fixes an outer limit beyond which the life of a grand jury cannot be extended. For present purposes it is of statutory force, and it is the sole authority for establishing a grand jury other than one created in the circumstances and by resort to 18 U.S.C. § 3331.

The present motion is not one which is required by Rule 12(b)(2) and (3) to be raised before the plea is entered, since it is considered an objection that goes to jurisdiction. That point was decided under the earlier statutory form of present Rule 12(b)(2), (3) in the *McKay* case.

Accordingly, it is

Ordered that the indictment is dismissed.

### ON MOTION FOR REARGUMENT

The government argues that United States v. Wallace & Tiernan, Inc., 1965, 121 U.S.App.D.C. 245, 349 F.2d 222 and Shimon v. United States, 1965, 122 U.S. App.D.C. 152, 352 F.2d 449, 450–451, require a different result from that reached in the order filed January 29, 1974.

In the first case the indictment was returned during the original term of a grand jury found to have been convened by the right judge under Rule 6(a). Alternatively, the Court held that, if not Rule 6(a) but 11 D.C.Code § 2306 (a) controlled, the fact that the judge presiding in Criminal Court No. 1 rather than the Chief Judge (as Section 2306(a) required) had convened the grand jury did not invalidate the grand jury's indictments. The Court treated the defect (apparently the mode of calling the jury reflected the settled practice of the Court) as an irregularity in summoning the jury and not as a jurisdictional defect.

In *Shimon* the indictment was not by the allegedly improperly called and overextended grand jury. *Shimon* appears to have been indicted by a different grand jury for obstructing justice (18 U.S.C. § 1503) by impeding the grand jury investigation being conducted before the allegedly improperly called and overextended grand jury. The Court held that Rule 6(a), not the District Code, controlled, and that Rule 6(g) answered the overextension argument. The Court, that is, followed the primary holding and not the alternative ground of *Wallace & Tiernan*.

It is concluded that the decisions do not bear on the basis of the January 29, 1974, decision. Accordingly, it is

Ordered that the motion for reargument is denied.